UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NYDIA MERCADO PEEBLES, ET AL.,

VERSUS

INTEGRA LIFESCIENCES
CORPORATION

CV. NO. 16-532-JWD-EWD

JUDGE JOHN W. deGRAVELLES

## RULING AND ORDER

In this case, Plaintiffs Nydia Mercado Peebles, Claire Dianne Peebles, Carol Francis Peebles, and Scott Douglas Peebles assert claims associated with the death of Jack Cornelius Peebles ("Jack") following an April 2, 2015 laminectomy. (Doc. 1-2 at 1-2). Plaintiffs allege that Jack's head shifted during the procedure because it was not properly secured in a "Mayfield Clamp." (*Id.* at 4). Plaintiffs claim that Defendant Integra LifeSciences Corporation manufactured the Mayfield clamp used during the procedure and that the clamp was defective, giving rise to liability under the Louisiana Products Liability Act ("LPLA"). (*Id.*).

Defendant moves for summary judgment, arguing that Plaintiffs cannot prove any essential element of their claims. (Doc. 15-1 at 1). Defendant contends that, according to discovery responses from the doctor and medical center that performed the procedure,[1] the clamp actually used during the procedure cannot be identified and may no longer exist. (*Id.* at 2-3). According to Defendant, the doctor and medical center have similarly acknowledged that there was "no defect" in the clamp used during the surgery and the clamp did not cause Jack's injuries. (*Id.* at 3-4). Therefore, argues Defendant, Plaintiffs have no evidence that the clamp was unreasonably dangerous; instead, there is affirmative evidence that the clamp was not

---

[1] Defendant refers to these entities as the "Malpractice Defendants," (Doc. 15-1 at 2-4), apparently because they have been named as defendants in an action before Louisiana's medical review panel. (Doc. 15-2 at 1; Doc. 15-3 at 2).

1

defective and did not cause Jack's injuries. (*Id.* at 7-13). In response, Plaintiffs state that they "do not oppose the statements or motion for summary judgment[.]" (Doc. 17 at 1).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Defendant is entitled to summary judgment. The Fifth Circuit has set forth the following standards governing claims under the LPLA:

> To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.
>
> A product is "unreasonably dangerous" under the LPLA if the product meets at least one of the following criteria: (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55; (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56; (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

> These statutory mechanisms for establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty. However, for causes of action arising after the effective date of the LPLA, negligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA.
>
> To maintain a "construction or composition" defect claim under the LPLA, a plaintiff must establish that, at the time the product left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer. To maintain a failure-to-warn claim, a plaintiff must demonstrate that the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. Proving a design defect or a "construction or composition" defect is not a prerequisite to establishing a failure-to-warn claim. Even if a product is not defectively designed or constructed, a manufacturer may still have a duty to warn consumers about any characteristic of the product that unreasonably may cause damage.

*Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002) (formatting altered, citations and internal quotation marks omitted) (affirming district court's grant of summary judgment, which ruled in part that the plaintiff's claims of unreasonable dangerousness were "conclusory and unsubstantiated"); *see also Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (in design defect and failure-to-warn cases, courts generally apply a "risk-utility analysis" requiring a plaintiff to provide evidence "concerning the frequency of accidents like his own, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of his proposed alternative design").

Here, the discovery responses provided by Defendant support its assertion that Plaintiffs will be unable to prove their claims and that Jack's injuries were not caused by a defective clamp. (Doc. 15-2 at 2-3; Doc. 15-3 at 2-3). Defendant has therefore established, at least as a *prima facie* matter, that it is entitled to judgment as a matter of law. Plaintiffs have done nothing to rebut this showing or provide any of the evidence of a defect required under the rigorous standards set forth

in *Stahl* and *Krummel*.  Indeed, they do not oppose the grant of summary judgment.  (Doc. 17 at 1).  Although Plaintiffs have not asked for additional time to oppose summary judgment, the Court also notes *sua sponte* that the discovery deadline has passed.  (Doc. 10 at 1-2; Doc. 14 at 1-2).

For the foregoing reasons, Defendant has shown that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law.  Its motion for summary judgment (Doc. 15) is therefore GRANTED.  Judgment shall be entered consistent with this order.

Signed in Baton Rouge, Louisiana, on March 1, 2018.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**